**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| ROY A. O'GUINN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>LISA WALSH, *et al.*,<br><br>　　　　　Defendants. | Case No. 3:20-CV-00273-CLB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DENYING AS MOOT MISCELLANEOUS MOTIONS**[1]<br><br>[ECF Nos. 74, 76, 109, 110, 111] |

This case involves a civil rights action filed by Plaintiff Roy A. O'Guinn ("O'Guinn") against Defendants Dr. Martin Naughton ("Naughton"), Associate Warden of Programs Lisa Walsh ("Walsh"), NDOC Medical Director Michael Minev ("Minev"), NDOC Director Charles Daniels ("Daniels", and Nurse Debbie Keennon ("Keennon") (collectively referred to as "Defendants"). Currently pending before the Court is O'Guinn's motion for summary judgment. (ECF No. 74.) Defendants responded, (ECF No. 77), and O'Guinn replied. (ECF No. 87.) Defendants also filed a motion for summary judgment. (ECF Nos. 76, 79.)[2] O'Guinn opposed the motion, (ECF No. 88), and Defendants replied. (ECF No. 96.) O'Guinn also filed two motions for leave to file documents. (ECF Nos. 109, 110, 111.) For the reasons stated below, O'Guinn's motion for summary judgment, (ECF No. 74), is denied, Defendants' motion for summary judgment, (ECF No. 76), is granted, and O'Guinn's miscellaneous motions, (ECF Nos. 109, 110, 111), are denied as moot.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

O'Guinn is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently incarcerated at the Northern Nevada Correctional Center ("NNCC"). (ECF No. 1.) Defendants are/were employed with the NDOC at the time of

---

[1]　The parties have voluntarily consented to have this case referred to the undersigned to conduct all proceedings and entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 47.)

[2]　ECF No. 79 consists of O'Guinn's medical records filed under seal.

O'Guinn's complaint. (ECF No. 31.) On May 7, 2020, O'Guinn filed an application to proceed *in forma pauperis* and a civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) On July 27, 2020, O'Guinn submitted an amended complaint, which the Court screened pursuant to 28 U.S.C. § 1915. (ECF Nos. 9, 11.) The Court ordered O'Guinn to file an amended complaint, which he filed on October 5, 2020. (ECF No. 12.) The Court screened the second amended complaint, which is the operative complaint in this case. (ECF Nos. 12, 17.) O'Guinn was allowed to proceed on two claims: (1) Eighth Amendment deliberate indifference to serious medical needs against Defendants Naughton, Walsh, Minev, and Daniels (injunctive relief only); and (2) Eighth Amendment deliberate indifference to serious medical needs against Defendant Keennon. (ECF No. 17.)

In Count I, the District Court found that O'Guinn stated a colorable deliberate indifference claim based on his allegations that Dr. Naughton and Walsh have known about O'Guinn's pelvic girdle pain since 2019 and knew that the problem was not arthritis. According to the allegations in the complaint, despite knowing that O'Guinn needs more extensive treatment other than pain relief, neither Dr. Naughton nor Walsh have been willing to provide any medical treatment. As a result, O'Guinn allegedly has difficulty engaging in normal daily activities such as walking, sitting, and using the toilet. Additionally, O'Guinn alleged that Minev knew about O'Guinn's pelvic girdle issues when he denied O'Guinn's request to see an outside specialist as part of the Utilization Review Panel ("URP"). Finally, the claim for injunctive relief was allowed to proceed against Director Daniels because he appears to have authority to order medical treatment for O'Guinn. (*Id.* at 6-7.)

As to the Count II claim, the District Court found that O'Guinn stated a colorable deliberate indifference claim based on his allegations that Keenan was aware of O'Guinn's pelvic girdle issues, had seen the x-rays in November 2019, knew O'Guinn was in pain, and knew about O'Guinn's deteriorating situation. However, despite this knowledge, O'Guinn alleges that she intentionally interfered with his medical care by preventing him from obtaining a four-wheel walker, causing him to suffer in pain with a

1 "flimsy" two-wheel walker that could not support his weight to relieve his pain. (*Id.* at 10.)

2 On June 20, 2022, O'Guinn filed his motion for summary judgment arguing: (1) Defendants have intentionally denied adequate medical treatment and care for his serious pelvic girdle injury/damage; (2) Defendant Keennon has been intentionally interfering with O'Guinn's medical care by preventing him from obtaining a 4-wheel walker causing him to continue to suffer in substantial pain; and (3) Defendants are not entitled to qualified immunity. (ECF No. 74.) Defendants opposed the motion, (ECF No. 77), and O'Guinn replied, (ECF No. 87).

On June 30, 2022, Defendants filed their motion for summary judgment arguing: (1) O'Guinn's pelvic girdle does not objectively constitute a serious medical condition; (2) even if O'Guinn's pelvic girdle constitutes a serious medical condition, Defendants were not deliberately indifferent; (3) most of O'Guinn's claims are barred for failing to exhaust his administrative remedies; (4) Defendants are entitled to qualified immunity; and (5) O'Guinn is not entitled to summary judgment. (ECF No. 76) O'Guinn opposed the motion, (ECF No. 88), and Defendants replied. (ECF No. 96.)

## II.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then

(2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the

nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues

of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

### III.   DISCUSSION

#### A.   Eighth Amendment – Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002)

(internal quotation omitted). However, a prison official may only be held liable if they "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which they can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

### 1.   Analysis

Starting with the objective element, the parties dispute that O'Guinn's medical issue related to his pelvic girdle constitutes a serious medical need. O'Guinn argues his pelvic girdle causes him pain which results in difficulty engaging in normal daily activities such as walking, sitting, and using the toilet. (ECF No. 74.) Defendants argue that while O'Guinn subjectively claims excruciating pain for his pelvic girdle issues, there is no objective medical evidence of an underlying impairment that would produce the pain described by O'Guinn. (ECF No. 76.)

In support of the motion for summary judgment, Defendants submitted authenticated evidence and sworn declarations, which affirmatively show the following: On February 22, 2018, O'Guinn had an appointment with a nurse where he discussed pain from a motor vehicle accident that occurred in 1981 and requested pain medication. (ECF No. 79 at 20 (sealed).) The nurse noted O'Guinn was "observed on camera leaving clinic… barely perceived limp [no] distress and socializing jovially." (*Id.*) On November 8, 2019, an x-ray showed "no fracture or significant degenerative changes are evident. Surgical clips are noted in the right pelvis… Negative right hip." (*Id.* at 257 (sealed).)

On January 15, 2020, O'Guinn was seen in the clinic for an appointment regarding a request for disability accommodations for a "shattered hip", however x-rays did not

support his claim and there is "nothing wrong with hip". (*Id.* at 16-17 (sealed).) On March 4, 2020, O'Guinn was a no show for an appointment regarding his hip pain. (*Id.* at 16 (sealed).) On May 6, 2020, O'Guinn had another clinic visit and the provider noted O'Guinn is "convinced his pelvis [was] 'pulverized' in the accident and that he has a 'black box' holding it together. Xray 6 mos ago shows surgical clips and otherwise negative." (*Id.*)

On August 26, 2020, O'Guinn was seen again at the medical clinic, and it was noted that "previous xrays show surgical clips on pelvis, but no 'crushing' and no 'black box' which [O'Guinn] claims holds it together but causes excruciating pain. Pelvic xray done today." (*Id.* at 15 (sealed).) The x-ray revealed "[s]urgical clips . . . in the lower pelvis bilaterally, O'Guinn's "pelvis" and "hips" are "intact with no fracture or significant degenerative changes." (*Id.* at 255-256 (sealed).) To assist with ambulation, O'Guinn was issued a standard 2-wheel walker. (*Id.* at 15, 42, 43 (sealed).) On August 27, 2020, O'Guinn filed an Inmate Disability Accommodation Request for a 4-wheel walker and surgery. (*Id.* at 40-42 (sealed).) Following a medical evaluation, the request was denied because O'Guinn was "seen on the facility's camera using the drinking fountain without the walker and using his legs alternately to push the water button. Also seen… using walker as exercise bar lifting his body… [O'Guinn] has good balance as he [is] able to stand [on] one leg at a time." (*Id.* at 42 (sealed).)

Progress notes from a clinic visit on September 18, 2020, state:

> [O'Guinn] came to clinic requesting a new walker because the screws had fallen out of his. While he was talking to nursing, [he] was pressing down on the hand rests and suspending himself off the ground and swinging his legs back and forth. He was admonished about the safety issues and reminded that he will not get another walker if he will not use them properly. There is video footage on file of [O'Guinn] doing push-ups on his walker on many occasions. One screw is missing from the hand-hold though [he] has jammed the metal pieces together to hold the walker together solidly. The screw on the opposite side is halfway out. If the walker is used properly, it will hold together until a replacement can be located. The second screw was put back in place. [O'Guinn] became irate [with] nursing staff and demanded a 4-wheel seated walker. He was asked to leave. CO Owens told this nurse that [O'Guinn] was doing his "push-ups" or "dips" on his walker in the clinic waiting room while waiting to see a nurse. [O'Guinn] announced he would be filling out another grievance and will be suing this

nurse for not giving him the seated walker he needs for his excruciating pain.

(*Id.* at 14 (sealed).)

Progress notes from September 24, 2020, state the x-ray performed on August 26, 2020, found negative pelvis, hips intact with no fracture or significant degenerative damage. The note also states, "no walker replacement due to misuse and intentionally damaging." (*Id.* at 13 (sealed).)

Progress notes from November 8, 2017, February 22, 2018, May 16, 2018, July 6, 2020, August 26, 2020, August 27, 2020, September 24, 2020, consistently showed that upon examination, O'Guinn was found to ambulate well with no distress or difficulty. (*Id.* at 13-24 (sealed).)

X-rays performed on April 12, 2021, showed O'Guinn's pelvis and hips appeared "to be intact". (*Id.* at 262 (sealed).) A CT-scan of O'Guinn's pelvis performed on May 21, 2021, showed "no acute pelvic CT abnormalities. No significant osteoarthrosis of the hips bilaterally." (*Id.* at 260-61 (sealed).)

Defendant Naughton, a medical doctor employed at NNCC, provided a sworn declaration in support of Defendants' motion for summary judgment. (*Id.* at 4-6 (sealed).) Dr. Naughton states he first examined O'Guinn on November 21, 2019, due his complaint of hip pain and ibuprofen and an x-ray were ordered. (*Id.* at 4 (sealed).) On January 15, 2020, Naughton reviewed the x-ray report with O'Guinn, but the x-ray report did not support O'Guinn's claim of hip pain due to a shattered hip or his request for an accommodation. (*Id.*) The x-rays showed nothing wrong with O'Guinn's hip, and contrary to his claim, his pelvis was not pulverized and there was no black box holding his hip together. (*Id.*) The report, prepared by Dr. Leon Jackson, MD, found "[no] fracture or significant degenerative changes are evident," but noted "surgical clips . . . in the right pelvis" and Dr. Jackson concluded "[n]egative right hip." (*Id.*) Based on the report and Naughton's own examination, Naughton concluded that O'Guinn was not suffering from a serious medical condition based on the condition of his hip. (*Id.*)

On August 26, 2020, Naughton again examined O'Guinn, based on his complaints of pain from a crushed pelvis and his request for a four-wheel walker. (*Id.*) While O'Guinn ambulated without difficulty, based on his subjective complaints of pain, he was provided a standard two-wheel walker and another x-ray his hip was taken. (*Id.*) Dr. Leon Jackson reported that while the x-ray revealed "[s]urgical clips . . . in the lower pelvis bilaterally, [O'Guinn's] pelvis appear[ed] to be intact… [and his] hips are intact with no fracture or significant degenerative changes." (*Id.* at 4-5 (sealed).) Based on this new x-ray report and Naughton's own examination, Naughton again concluded that O'Guinn was not suffering from a serious medical condition based on the condition of his hip, and therefore verbally told the nursing staff that O'Guinn should only be given a standard two-wheel walker. (*Id.* at 5 (sealed).) Based on O'Guinn's subjective complaint of pain, Naughton order that O'Guinn be given ibuprofen. (*Id.*)

On May 12, 2021, O'Guinn underwent a CT-Scan and the findings of Dr. Earl Jay Landrito, MD were consistent with x-rays taken. (*Id.*) While [s]urgical clips [were] seen," Dr. Landrito's impressions were "[n]o acute pelvic CT abnormalities" and "[n]o significant osteoarthrosis of the hips bilaterally." (*Id.*)

As part of his examination of the record, Naughton reviewed video of O'Guinn, taken on September 2, 2020, at 12:46 pm, depicting O'Guinn misusing his walker as an exercise bar to lift his body. He also reviewed video depicting that O'Guinn did not need a walker, as he was able raise his leg off the ground and press the water fountain button to fill a water bottle while balancing on the other leg. He also reviewed a video, taken on September 24, 2020, showing that O'Guinn able to walk normally without a walker and without distress. Because Mr. O'Guinn misused his walker and did not need the walker based on x-rays and video evidence, the broken walker was not replaced. (*Id.*)

Based on Naughton's previous examinations, the two x-ray reports, the CT-Scan, the video evidence and my review of the medical records, Naughton concludes that "O'Guinn is not suffering from a serious medical condition based on the condition of his hip." (*Id.*) Naughton further determined that O'Guinn does not require a walker of any kind

as he ambulates with no distress or difficulty, even without a walker. He also determined that because the objective medical evidence shows no sign of serious injury to O'Guinn's hip, he did not require a consultation with an outside expert. (*Id.* at 6 (sealed).) Based on Naughton's examination of O'Guinn and a review of the medical records, it is Naughton's opinion that O'Guinn's hip condition was appropriately diagnosed, monitored, and treated with pain medication, under accepted medical standards. (*Id.*)

Defendant Keennon, a registered nurse employed at NNCC, also provided a sworn declaration in support of Defendants' motion for summary judgment. (*Id.* at 8-11 (sealed).) Keennon states that based on her previous nursing assessments, the two x-ray reports, the CT scan, the video evidence, her review of the medical records, and her 12 years' experience as a registered nurse, she is unable to recommend a walker of any type for O'Guinn. (*Id.* at 11 (sealed).) Keennon states she first saw O'Guinn for this condition in January of 2020 and participated in approximately four of his appointments for the same complaint. (*Id.*) After reviewing all the medical information related to this issue, she is still unable to substantiate his claims of "a shatter hip, a crushed pelvis, of a black box holding his pelvis together, or of continued excruciating pain 40 years after a motor vehicle accident." (*Id.*) Keennon states that O'Guinn "has demonstrated repeatedly that he is able to ambulate and balance without difficulty. It is [her] opinion as a registered nurse, based on [her] experience, assessments, and review of the medical records, that [O'Guinn's] condition was appropriately within the accepted standard of care." (*Id.*)

In addition to O'Guinn's medical records, Defendants manually filed a DVD containing the videos described above of O'Guinn. (ECF No. 81.) These videos show O'Guinn (1) using his walker as an exercise bar; (2) balancing on one leg, while raising the other leg (and alternating legs) to push a water fountain button with his knee; and (3) footage of O'Guinn walking normally, without a walker and without apparent distress. (*Id.*)

While O'Guinn claims he has pain associated with his pelvic girdle, the objective medical evidence, as well as O'Guinn's own activities (i.e., balancing on one leg, walking normally, exercising on walker), do not support his assertion. Additionally, because

O'Guinn's condition did not require any treatment, it arguably does not constitute a serious medical need. *See McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992) ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."), *overruled on other grounds, WMX Techns., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Thus, it appears on this basis alone, Defendants are entitled to summary judgment.

However, even assuming O'Guinn's alleged pain constitutes a serious medical condition, Defendants also argue summary judgment should be granted because O'Guinn cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to O'Guinn's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to O'Guinn's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires O'Guinn to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, as detailed above, Defendants submitted authenticated evidence and sworn declarations which affirmatively show O'Guinn received adequate care <u>despite what appears to be his lack of a serious medical condition</u>, including numerous clinic visits, examinations, x-rays, a CT-scan, pain medication, and a walker. Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to O'Guinn to produce evidence that demonstrates an issue of fact

exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

In O'Guinn's motion for summary judgment and his opposition to Defendants' motion for summary judgment, O'Guinn reiterates his claim that despite knowing that O'Guinn needs more extensive treatment other than pain relief, Defendants have been unwilling to provide any medical treatment, including a 4-wheel walker and surgery. O'Guinn asserts that due to his pain, he has difficulty engaging in normal daily activities such as walking, sitting, and using the toilet. O'Guinn cites to medical records, including records from his motor vehicle accident in 1981, to support his assertions. (*See* ECF Nos. 74, 84, 88.)

Aside from his own assertions, O'Guinn provides no further evidence or support that a denial or delay in treatment caused him <u>any</u> damage. He has not come forward with evidence to show Defendants knew of an excessive risk to his health and disregarded that risk. To the contrary, the authenticated and admissible evidence before the Court shows O'Guinn's concerns about his pain where affirmatively monitored and there is no evidence showing that he had any damage to his hips, let alone a denial or delay in providing treatment caused any further or additional damage. Therefore, O'Guinn has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs, as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with treatment related to his pelvic girdle. *See Hallett*, 296 F.3d at 744.

Moreover, to the extent that O'Guinn's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* O'Guinn has failed to show that Defendants' "chosen course of treatment was medically unacceptable under the circumstances." *Id.* Accordingly,

O'Guinn fails to meet his burden to show an issue of fact that Defendants were deliberately indifferent to his needs. Rather, at most, O'Guinn has only shown that he disagrees with Defendants between alternative courses of treatment, such as being given a 4-wheel walker and surgery (neither of which are clinically indicated), as opposed to a 2-wheel walker, pain medication, and monitoring.

Accordingly, Defendants' motion for summary judgment is granted as to the Eighth Amendment deliberate indifference claims, and O'Guinn's motion for summary judgment is denied.[3]

### IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

For the reasons stated above, **IT IS ORDERED** that O'Guinn's motion for summary judgment, (ECF No. 74), is **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment, (ECF No. 76), is **GRANTED**;

**IT IS FURTHER ORDERED** that O'Guinn's miscellaneous motions, (ECF Nos. 109, 110, 111) are **DENIED as moot**; and,

**IT IS FURTHER ORDERED** that the Clerk of the Court **CLOSE** this case and **ENTER JUDGMENT** accordingly.

**DATED**: September 23, 2022.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[3] Because the Court finds that O'Guinn's claims fail on the merits, and is granting Defendants' motion in its entirety, the Court need not address the other arguments or defenses presented in the motions related to exhaustion or qualified immunity.